UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-08038-CAS-Ex | Date | July 15, 2026 |
| Title | Statewide Enterprises, Inc. v. RLI Insurance Company | | |

| | | |
|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | |
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

Proceedings: (IN CHAMBERS) - PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 34, filed on April 24, 2026)

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 35, filed on April 24, 2026)

## I. INTRODUCTION

This case centers on claims by the plaintiff that its insurer had a duty to defend the plaintiff in several related lawsuits but refused to do so.

On August 26, 2025, plaintiff Statewide Enterprises, Inc. ("Statewide" or the "Insured") filed this action against defendant RLI Insurance Company ("RLI"), Statewide's professional liability insurer. Statewide asserts the following claims for relief: (1) declaratory judgment; (2) breach of contract; and (3) breach of the covenant of good faith and fair dealing. Dkt. 1 ("Compl.").

On November 25, 2025, plaintiff filed a motion for partial summary judgment. Dkt. 18-1. On April 24, 2026, the parties filed a stipulation that plaintiff's motion should be withdrawn, dkt. 33, which the Court granted. Dkt. 37.

On April 24, 2026, plaintiff filed the instant motion for summary judgment. Dkt. 34-1 ("Mot. by plaintiff"). Plaintiff concurrently filed a statement of uncontroverted facts. Dkt. 34-2 ("PUSF"). On May 18, 2026, defendant filed an opposition to plaintiff's motion. Dkt. 40 ("Opp. by defendant"). Defendant concurrently filed a statement of genuine disputes, dkt. 42 at 2-46, and a statement of additional material facts, dkt. 42 at 47-88. On

May 26, 2026, plaintiff filed a reply. Dkt. 45 (“Reply by plaintiff”). Plaintiff did not file a response to defendant’s statement of genuine disputes or a response to defendant’s statement of additional material facts. See C.D. Cal. L.R. 56-3. On May 27, 2026, defendant filed an objection to and request to strike plaintiff's reply because it was untimely filed. Dkt. 47.[1]

On April 24, 2026, defendant filed the instant motion for summary judgment. Dkt. 35-1 (“Mot. by defendant”). Defendant concurrently filed a statement of uncontroverted facts. Dkt. 35-2 (“DSUF”). On May 18, 2026, plaintiff filed an opposition to defendant’s motion. Dkt. 38 (“Opp. by plaintiff”). Plaintiff concurrently filed a statement of genuine disputes. Dkt. 39. On May 22, 2026, defendant filed a reply. Dkt. 44 (“Reply by defendant”). Defendant did not file a response to plaintiff’s statement of genuine disputes. See C.D. Cal. L.R. 56-3.

On June 8, 2026, the Court held a hearing. Having carefully considered the parties’ arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

Unless otherwise noted, the Court references only facts that are uncontroverted and to which evidentiary objections, if any, have been overruled.

### A. The Parties’ Insurance Policy

Defendant RLI issued “Target Professionals – Miscellaneous Professional Liability Policy,” number RTP0043390, to Statewide as the Named Insured, with a policy period from June 28, 2024, through June 28, 2025 (“the Policy”). PSUF ¶ 2. The Policy has a $2,000,000 policy limit per claim and per aggregate. Id. ¶ 3. The Policy provides in part:

> 3. DEFENSE AND SETTLEMENT
>
> The Insurer has the right and duty to defend any Claim to which this insurance applies, up to the Limit of Liability of the Policy, even if the allegations of the

[1] Because plaintiff’s motion is scheduled for hearing on June 8, 2026, plaintiff’s reply, filed on May 26, 2026, was one day late. See C.D. Cal. L.R. 7-10. The Court in its discretion declines to strike plaintiff’s reply.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL 'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-08038-CAS-Ex | Date | July 15, 2026 |
| Title | Statewide Enterprises, Inc. v. RLI Insurance Company | | |

> Claim are groundless, false or fraudulent. The duty to defend ends when the Insurer has tendered the remaining Limit of Liability of the Policy to the Named Insured or upon exhaustion of the Limit of Liability of the Policy by payment of Claim Expenses or Damages. The Insurer will pay Claim Expenses pursuant to its duty to defend Claims to which the insurance applies. The Insurer has the right to investigate, adjust, defend, appeal and, with the consent of the Named Insured, negotiate the settlement of any Claim whether within or above the Deductible….

Dkt. 1-1 (the Policy), at 5-6 (emphases omitted).

> The Policy defines terms, including the following:
>
> "Claim" means:
>
> a. a demand for money as compensation for a Wrongful Act; or
> b. any civil judicial or administrative proceeding, including a Disciplinary Proceeding, mediation or arbitration initiated against any Insured seeking to hold such Insured responsible for a Wrongful Act, including any appeal therefrom ….
>
> "Circumstance" means any fact, situation, event or occurrence that could reasonably be the basis for a Claim.
>
> "Wrongful Act" means any actual or alleged error, omission or negligent act, committed solely in the rendering of or failure to render Professional Services by an Insured or any person or entity for which the Insured is legally liable. Wrongful Act also means any actual or alleged error, omission or negligent act committed solely in the rendering of or failure to render Professional Services by an Insured or any person or entity for which the Insured is legally liable and that results in Personal Injury.
>
> "Personal Injury" means:
>
> …
>
> c. Oral or written publication, in any manner, of material that violates a person's right of privacy; ….

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** ‘O’

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-08038-CAS-Ex | Date | July 15, 2026 |
| Title | Statewide Enterprises, Inc. v. RLI Insurance Company | | |

> “Professional Services” means services rendered to others for a fee solely in the conduct of the Insured’s profession as stated in Item 8. of the Policy Declarations.[2]
>
> “Claim Expenses” means reasonable and necessary legal fees and expenses incurred by the Insurer or by any attorney designated by the Insurer to defend any Insured and all other fees, costs, costs of attachment or similar bonds resulting from the investigation, adjustment, defense and appeal of a Claim, but does not include salaries, wages, overhead or benefits expenses of any Insured. The Insurer has no obligation, however, to apply for or furnish costs of attachment or similar bonds. Claim Expenses do not include any fees and expenses incurred prior to the date the Insured first provided notice of a Claim to the Insurer.
>
> “Damages” means monetary judgments or settlements, including but not limited to compensatory damages, prejudgment and post-judgment interest that an Insured is legally obligated to pay, and punitive or exemplary damages to the extent such damages are insurable under applicable law ….

Id. at 6-8 (emphases omitted).

The Policy also contains two exclusions from coverage that are relevant to this dispute:

> The Insurer shall not be liable for Damages or Claim Expenses in connection with any Claim arising out of, directly or indirectly resulting from or in consequence of or in any way involving:
>
> …
>
> > [1] any actual or alleged violation of any securities, antitrust, restraint of trade, unfair trade practices, consumer protection, or other similar law by any person, including but not limited to any Insured [the “Consumer Protection Exclusion”].
> >
> > …

[2] Item 8 states: “Professional Services: Solely in the performance of providing Real Estate Services.” Policy at 4. “Real Estate Services” is defined in the Policy. Id. at 25-26.

[2] a Privacy Breach [the “Privacy Breach Exclusion”]

Id. at 9-10, 24 (emphases omitted).

“Privacy Breach” means:

a. the theft or misappropriation of Private Information while in the care, custody or control of an Insured or a third party from whom the Insured is legally liable; or
b. a violation of a Privacy Regulation.

“Privacy Regulation” means statutes or regulations regulating the use and protection of Personal Information.

“Personal Information” means:

a. an individual’s name, address, telephone number, or email address;
b. medical or healthcare data;
c. a social security number;
d. a driver’s license number or any other state identification number;
e. a financial account number in combination with any required password, access code or other security code that would permit access to the financial account;
f. a credit or debit card number; or
g. non-public individually identifiable information, as defined in any applicable Privacy Regulation.

Id. at 23-24.

Via an endorsement titled “Additional Insured – Vicarious Liability,” the Policy also provides insurance coverage to an “Insured,” defined in part as one “whom the Named Insured or Subsidiary is required by written contract to add as an additional insured under this Policy, but solely for Wrongful Acts of the Named Insured or Subsidiary. [Listing various corporate entities].” Policy at 34-37 (emphases omitted). Plaintiff contends that these corporate entities are Statewide’s owner clients and contends that these entities are covered under the Policy. Opp. by plaintiff at 22. By contrast, defendant contends that Statewide’s owner clients are not insureds under the Policy. Opp. by defendant at 24; Dkt. 42 at 7, ¶ 7. Defendant argues that Statewide’s owner

clients are not covered by the Policy because no evidence "shows that Statewide has entered into … written contracts that required it to add any indemnitor/owner client, 'as an additional insured' to the … Policy." Opp. by defendant at 24; dkt. 42 at 87, ¶ 112.

### B. The Underlying Claims Against Statewide

Statewide is a California corporation with its principal place of business in Los Angeles, California. PSUF ¶ 1. Statewide is a property management company primarily for owners of residential apartment buildings. DSUF ¶ 8.

A number of lawsuits have been filed against Statewide in the California Superior Court for the County of Los Angeles (the "underlying actions").[3] PSUF ¶¶ 9-47. Each of these underlying actions alleges that Statewide manages apartment complexes throughout California and dealt with each plaintiff as a prospective tenant and resident at an apartment complex managed by Statewide. Id. They also allege that each plaintiff completed a rental application and that Statewide obtained one or more investigative consumer reports about each plaintiff. Id.

The underlying actions allege that Statewide did not provide a means by which the plaintiffs could indicate that they wished to receive a copy of any report prepared in connection with their rental applications. See id.

The underlying actions allege that Statewide's failure to provide plaintiffs with a copy of any report prepared in connection with their rental applications constitutes willful or negligent conduct in violation of the Investigative Consumer Reporting Agencies Act

[3] The underlying actions include: (1) Price v. Statewide Enterprises, Inc., Case No. 24STCV27844 (the "Price Action"); (2) Gamez v. Statewide Enterprises, Inc., Case No. 24STCV29319 (the "Gamez Action"); (3) Montgomery v. Statewide Enterprises, Inc., Case No. 25STCV07641 (the "Montgomery Action"); (4) Kats v. Statewide Enterprises, Inc., Case No. 24SMCV05636 (the "Kats Action"); (5) Bagheri v. Statewide Enterprises, Inc., Case No. 25VECV01470 (the "Bagheri Action"); (6) Perez v. Statewide Enterprises, Inc., Case No. 24STCV30828 (the "Perez Action"); (7) Kress v. Statewide Enterprises, Inc., Case No. 2 5STCV07489 (the "Kress Action"); (8) Hidalgo v. Statewide Enterprises, Inc., Case No. 25VECV02725 (the "Hidalgo Action"). SUF ¶¶ 9-47; dkts. 1-2 to 1-9.

(“ICRAA”), California Civil Code sections 1786-1786.60. Id. The underlying actions seek damages for the failure to provide a copy of such reports to the plaintiffs. Id.

On or about April 18, 2025, a letter demand for $10,000 was made on behalf of Max Kuciej against Statewide alleging violation of the ICRAA and otherwise making allegations similar to the above-described underlying actions (the “Kuciej Claim”). Id. ¶ 48.

On or about July 3, 2025, Statewide gave notice to RLI of the Kuciej Claim, requesting a defense of that claim. Id. ¶ 50.

On or about April 18, 2025, Statewide received a claim from attorney Glenn Murphy, on behalf of Pedro Gonzalez Ramirez, against Statewide, alleging violations of the ICRAA and otherwise making allegations similar to the above described underlying actions (the “Ramirez Claim”). Id. ¶ 51.

On or about July 3, 2025, Statewide gave notice to RLI of the Ramirez Claim, requesting a defense of that claim. Id. ¶ 52.

Later, attorney Glenn Murphy advised Statewide that he was no longer representing Pedro Gonzalez Ramirez. Statewide does not know which attorney, if any, is representing Pedro Gonzalez Ramirez but must still prepare to defend the claim and any lawsuit alleging that claim. Id. ¶ 53.

The underlying actions, the Kuciej Claim, and the Ramirez Claim are referred to, collectively, as the “Underlying Actions and Claims.”

### C. RLI Refuses to Defend Statewide

Statewide timely provided RLI with notice of the Underlying Actions and Claims and requested that RLI defend Statewide against them. Id. ¶ 54.

On October 29, 2024, Statewide’s coverage counsel, Timothy Thornton, gave notice to RLI of the Price Action, requesting a defense, and advised RLI that other similar suits would likely be filed by the same plaintiff’s attorney who was soliciting clients at apartment complexes managed by Statewide. Id. ¶ 55.

On December 6, 2024, RLI sent a letter to Statewide denying a defense for the Price, Gamez, and Kats Actions. Id. ¶ 56.

On January 7, 2025, Statewide’s insurance coverage counsel, Timothy Thornton, wrote to RLI explaining that its denial of defense for the Price, Gamez and Kats Actions was incorrect. Id. ¶ 57.

On January 13, 2025, RLI sent a letter to Statewide again denying a defense for the Price, Gamez and Kats Actions and also the Perez Action. Id. ¶ 58.

On January 21, 2025, RLI sent a letter to Statewide’s coverage counsel again denying a defense for the Price, Gamez, Kats and Perez Actions. Id. ¶ 59.

On April 21, 2025, Statewide’s insurance coverage counsel, David Gauntlett, wrote to RLI explaining that its denial of defense for the Price, Gamez, Kats, and Perez Actions was incorrect. Id. ¶ 60.

On June 16, 2025, Statewide’s insurance coverage counsel, James Lowe, wrote to RLI asking for a response to the April 21, 2025 letter from David Gauntlett regarding RLI’s defense of the Price, Gamez, Kats, and Perez Actions. Id. ¶ 61.

On July 3, 2025, Statewide’s insurance coverage counsel, James Lowe, wrote to RLI asking for a defense of the additional Montgomery and Kress Actions, providing a copy of those complaints. Id. ¶ 62.

On July 7 2025, RLI’s insurance coverage counsel, Matthew Hafey, wrote to Statewide’s coverage counsel, David Gauntlett, arguing for RLI’s denial of a defense of the Price, Gamez, Kats, Perez, Montgomery, Kress, Bagheri, and Hidalgo Actions. Id. ¶ 63.

On July 25, 2025, RLI wrote to Statewide confirming RLI’s denial of a defense of the Price, Gamez, Kats, Perez, Montgomery, Kress, Bagheri, and Hidalgo Actions. Id. ¶ 64.

On August 13, 2025, RLI wrote to Statewide denying any coverage for the Kuciej Claim. Id. ¶ 65.

On August 13, 2025, RLI wrote to Statewide denying any coverage for the Ramirez Claim. Id. ¶ 66.

Statewide retained and paid its own defense counsel to defend the Price, Gamez, Kats, Perez, Montgomery, Kress, Bagheri, and Hidalgo Actions and the Kuciej and Ramirez Claims. Id. ¶ 67.

### D. Resolution of the Underlying Actions and Claims

After deliberation, plaintiff decided to pursue a global Settlement Agreement to resolve all of the Underlying Actions and Claims. Id. ¶ 71. Plaintiff's decision to settle was based on advice of counsel that there was significant litigation risk and potential exposure. Id. ¶ 72. The settlement decision was based on considering the minimum statutory damages alleged by the underlying plaintiffs, the substantial ongoing defense expenses that Statewide would have to continue paying without insurer support, and the possibility that Statewide would have to pay an award of attorneys' fees to the underlying plaintiffs if the case were not settled. Id. Settlement also avoided continued disruption of Statewide's normal business operations. Id.

Before execution of the Settlement Agreement, one claimant, Nelly Perez, agreed to a California Code of Civil Procedure Section 998 offer of $10,100.00 on March 10, 2025. Id. ¶ 73. The Settlement Agreement resolved all remaining claims in the Underlying Actions and Claims, except for that of Pedro Gonzalez who never initiated a lawsuit. Id. ¶ 74. The Settlement Agreement required Statewide to pay a total of $895,000.00, in addition to the $10,100.00 paid to Ms. Perez. Id. ¶ 75. Based on Statewide's discussions with counsel and its understanding of potential exposure, the settlement amount of $895,000.00 was deemed reasonable as the amount due for the claims plus potential attorneys' fees was likely to exceed that figure. Id. ¶ 81.

Each participating owner client of Statewide funded the Settlement Agreement, the Perez settlement, and Statewide's defense expenses in amounts equal to their proportional share of liability presented by the Underlying Actions and Claims. DSUF ¶ 99. Two Statewide owner clients paid a fraction of Statewide's defense expenses incurred on their behalf. Id. ¶ 100. Two Statewide owner clients paid nothing toward their share of the settlement amount, while a third owner paid only 50% of their share of the settlement. Id. ¶ 101. Statewide paid for the Perez settlement on a 50/50 basis with the Statewide owner client who rented Nelly Perez her unit. Id. ¶ 102. Statewide paid only parts of the Settlement Agreement amount, the Perez settlement, and defense expenses that were not paid by Statewide's owner clients. Id. ¶ 103. Statewide is currently pursuing two of its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL ‘O’**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-08038-CAS-Ex | Date | July 15, 2026 |
| Title | Statewide Enterprises, Inc. v. RLI Insurance Company | | |

owner clients for their respective shares of the settlement and defense expenses that Statewide paid on their behalf. Id. ¶ 104. Statewide has paid a total of $317,706.14 toward settlement of the Underlying Actions and Claims. Dkt. 42 at 87, ¶ 113. Statewide has paid less than $49,283.31 to defend the Underlying Actions and Claims through completion. Id. ¶ 114.

Fifty percent of the settlement amount ($447,500.00) was paid within 30 days of the agreement's execution. PSUF ¶ 84. The remaining fifty percent was paid over the course of six monthly installments. Id. ¶ 85. All payment obligations under the Settlement Agreement were satisfied by Statewide and its owner clients. Id. ¶ 86. Statewide seeks reimbursement from RLI for a total of $905,100.00 as the principal settlement sum, which includes the $10,100.00 paid to Nelly Perez. Id. ¶ 89.

Plaintiff contends that as of June 8, 2026, interest accruing at 10% per annum from the date of each settlement execution has resulted in an additional $74,085.07 owed to Statewide. Id. ¶ 90. Plaintiff contends that as of June 8, 2026, RLI owes Statewide a total of $979,785.07 for settlement expenses and interest. Id. ¶ 91. Plaintiff asserts that per diem interest will accrue on the total principal settlement expense at $247.97 per day after June 8, 2026. Id. ¶ 92. Defendant contends that awarding such interest to plaintiff is inappropriate. Dkt. 42 at 38-40.

Statewide retained the law firm of Wood, Smith, Henning & Berman (“WSHB”) to defend the Underlying Actions and Claims. Id. ¶ 93. Statewide considered the rates charged by WSHB to be reasonable for the nature of the legal work being done and consistent with rates of attorney charges in Los Angeles, California paid by Statewide to other attorneys in the course of its business. Id. ¶ 97.

The total fees and expenses billed during the relevant period was $181,657.75. All the charges were agreed to and paid to WSHB by Statewide or its owner clients. Id. ¶ 99. The vast majority of this sum was reasonable and necessary for defending the Underlying Actions and Claims. Id. ¶ 100. A small portion of the invoiced expenses were related to other work performed by WSHB on behalf of Statewide. Id. ¶ 101. Specifically, Statewide asked WSHB to review Statewide's Privacy Policy, as well as other contracts and forms, to ensure compliance with statutory regulations. Id. ¶ 102. These non-defense expenses totaled $3,366.50, and Statewide does not seek RLI's reimbursement of that amount of the WSHB invoices. Id. ¶ 103.

Statewide seeks reimbursement from RLI of the principal amount of defense expenses of $178,291.25. Id. ¶ 104. Plaintiff contends that as of June 8, 2026, interest accruing at 10% per annum from the date of each invoice will have resulted in an additional $19,872.14 owed to Statewide. Id. ¶ 105. Plaintiff contends that as of June 8, 2026, RLI owes Statewide principal and interest for defense of the Underlying Actions and Claims a total of $198,163.39. Id. ¶ 106. Plaintiff contends that per diem interest will accrue on the total principal defense expenses at $48.85 per day after June 8, 2026 until all principal and interest is paid. Id. ¶ 107. Defendant contends that awarding such interest payments to plaintiff is inappropriate. Dkt. 42 at 43-46.

## III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV. DISCUSSION

### A. Duty to Defend

Statewide moves this Court "to declare that RLI … breached its duty to defend Statewide in the Underlying Actions and Claims and that RLI must pay to Statewide all reasonable defense and settlement expenses, plus prejudgment interest." Dkt. 18 at 1.

Statewide argues that each of the Underlying Actions and Claims alleges that Statewide acted with negligence and failed to abide by certain statutory provisions in a manner that violated the plaintiffs' privacy rights. Mot. at 1. Statewide argues that these allegations trigger RLI's duty to defend Statewide under the Policy, which provides professional liability coverage for any "Wrongful Act," which means "[1] any actual or alleged error, omission or negligent act, committed solely in the rendering of or failure to render Professional Services by an Insured or any person or entity for which the Insured is legally liable"; and "[2] any actual or alleged error, omission or negligent act committed solely in the rendering of or failure to render Professional Services by an Insured or any person or entity for which the Insured is legally liable and that results in Personal Injury." Policy at 4.

Statewide argues that none of the Policy's exclusions apply. Mot. at 14. First, Statewide argues that the Consumer Protection Exclusion does not apply because "RLI cannot reasonably argue it meant to include privacy or negligence claims within the scope of the [Consumer Protection] Exclusion … when the text never uses either term." Id. at 18. Statewide argues that "[w]hile the ICRAA undoubtedly provides some degree of consumer protection, it extends beyond the traditional scope of consumer protection and also protects against privacy invasions." Id. at 18 (citing Cal. Civ. Code § 1786(b)). In particular, plaintiff argues that the ICRAA requires any person requesting an "investigative consumer report" to provide a simple means by which the subject of that report may request a copy. Id. (citing Cal. Civ. Code § 1786.16(a)(5)). Statewide argues that in the Underlying Actions and Claims, plaintiff is alleged to have failed to provide such reports and caused an "invasion of privacy." Mot. at 18. Statewide argues that

“[t]his discrete source of liability, independent of any other wrongful action allegedly taken by Statewide,” does not fall within the Consumer Protection Exclusion because “RLI cannot demonstrate how [the Consumer Proetction] Exclusion … would apply to the privacy aspects of the ICRAA claims.” Id. at 19.

Second, Statewide argues that the Privacy Breach Exclusion does not apply. Statewide argues that the Underlying Actions and Claims do not contain specific allegations as to the actual contents of the investigative consumer reports, and thus the allegations do not state that Statewide violated a “Privacy Regulation” regulating the use and protection of “Personal Information,” as defined in the Policy. Mot. at 21-22. Statewide argues that because the definition of “Personal Information” contains “a list of items combined with the disjunctive ‘or,’” RLI cannot establish that the investigative consumer reports Statewide is alleged to have acquired in violation of the ICRAA falls within any of the Policy definition of “Personal Information.” Id. at 22. Statewide argues that “[t]he only potentially applicable definition of ‘Personal Information’ is the final catch-all provision,” which Statewide contends is confusing and ambiguous because the catchall definition of “Personal Information” is circular: “Personal Information” is defined in the catchall provision as “non-public individually identifiable information, as defined in any applicable Privacy Regulations,” and in turn, “Privacy Regulations” is defined as “statutes or regulations regulating the use and protection of Personal Information.” Policy at 23. Statewide argues that because the meaning of “Privacy Regulation” does not unambiguously include the ICRAA, the Privacy Breach Exclusion does not relieve RLI of its duty to defend. Mot. at 22.

In its motion for summary judgment, defendant argues that RLI has no duty to defend or indemnify plaintiff with respect to the Underlying Actions and Claims. Mot. by defendant at 21-27.

Defendant first argues that the invasion of privacy allegations asserted against plaintiff in the Underlying Actions and Claims do not fall within the initial coverage grant of the Policy because “they do not allege an oral or written publication of anything … and no publication of any plaintiff’s personal information took place.” Mot. by defendant at 25. Accordingly, defendant argues that “[t]he invasion of privacy allegations fall outside the definition of ‘Personal Injury’ and hence outside the meaning of ‘Wrongful Act’” under the terms of the Policy. Id.

Defendant also argues that the Consumer Protection Exclusion relieves defendant entirely of its duty to defend because the ICRAA is a consumer protection law within the meaning of the Policy, and each of the Underlying Actions and Claims “repeatedly reference ICRAA and detail why Statewide failed to comply with that Act.” Mot. by defendant at 9, 22. Defendant argues that the proposition “[t]hat the ICRAA is a consumer protection law is not reasonably in dispute,” and that “Statewide’s President (Marc Chopp), lead defense attorney in the [Underlying Actions and Claims] (Mindy Bae), and insurance coverage counsel (Tim Thornton), all agreed” with this proposition. Id. at 10 (citing DSUF ¶¶ 105, 107, 109).[4]

Defendant further argues that “the Policy’s Privacy [Breach Exclusion] … bars any potential for Policy coverage.” Id. at 25. Defendant argues that the Privacy Breach Exclusion provides that defendant shall not be liable for damages in connection with any claim arising out of or involving a Privacy Breach, which includes a violation of a Privacy Regulation. See id. at 25-26. Defendant argues that “[b]ecause ICRAA is a Privacy Regulation, as the Policy broadly defines that term, the Privacy Breach exclusion applies to bar any potential for coverage for the invasion of privacy claims” asserted against plaintiff. Id. at 26.

Defendant also argues that the underlying claims asserted against plaintiff for declaratory relief or other equitable relief are likewise not covered under the Policy because “declaratory and injunctive relief claims are not a claim for “damages”—defined to mean “monetary judgments or settlements”—and are thus outside the Policy’s coverage grant.” Id. at 26. Moreover, defendant argues that such claims arise out of or involve the underlying allegations against Statewide for ICRAA violations, which are excluded from coverage under the Policy. Id.

[4] At deposition, Marc Chopp and Mindy Bae both answered in the affirmative to the question “Is ICRAA a consumer protection statute?” Dkt. 36-27 at 411:7-22; Dkt. 36-25 at 304:5-6. Defendant does not cite to evidence indicating that Tim Thornton “agreed” with the proposition that the ICRAA is a consumer protection statute; defendant merely cites to Tim Thornton’s deposition testimony in which Thornton agreed that a certain section of the December 6, 2024 letter sent by defendant to Marc Chopp accurately represented plaintiffs’ allegations in the Underlying Actions and Claims. Dkt. 36-30 at 559:6-14.

An insurer “faces an uphill battle from the beginning because the duty to defend in California is extensive.” Hudson Ins. Co. v. Colony Ins. Co., 624 F.3d 1264, 1267 (9th Cir. 2010). Under California law, “a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. . . . [T]he carrier must defend a suit which *potentially* seeks damages within the coverage of the policy.” Montrose Chem. Corp. v. Superior Court, 6 Cal.4th 287, 299 (1993) (emphasis in original) (citation omitted). Thus, a defense is excused only when “the third party complaint can *by no conceivable theory raise a single issue* which could bring it within the policy coverage.” Id. at 295 (emphasis in original); see also Croskey et al., Cal. Practice Guide: Insurance Litigation ¶ 7:520 (The Rutter Group 2015) (An insurer “must defend a suit which *potentially* seeks damages within the coverage of the policy.”) (emphasis in original).

“To determine whether the insurer owes a duty to defend, the court must compare the allegations of the underlying complaint with the terms of the policy.” Reese v. Travelers Ins. Co., 129 F.3d 1056, 1060 (9th Cir. 1997) (citing Montrose, 6 Cal. 4th at 295). Any ambiguity in the insurance policy, including in the exclusions, must be resolved in favor of finding coverage; and “[a]ny doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured’s favor.” Montrose, 6 Cal. 4th at 299-300.

As the party moving for summary judgment, the Insured must make a prima facie showing that there is potential coverage for the underlying action within the terms of the policy. See Anthem Elec., Inc. v. Pacific Employers Ins. Co., 302 F.3d 1049, 1055 (9th Cir. 2002). “Once a prima facie showing is made that the underlying action fell within coverage provisions, an insurer may defeat a motion for summary judgment only by producing undisputed extrinsic evidence conclusively eliminating the potential for coverage under the policy.” Id. (citing Maryland Cas. Co. v. National American Ins. Co. of Cal., 48 Cal. App. 4th 1822, 1832 (1996)). “Merely raising a triable issue of material fact will not defeat summary judgment in this instance.” PMA Capital Ins. Co. v. Am. Safety Indem. Co., 695 F. Supp. 2d 1124, 1125 (E.D. Cal. 2010). Rather, the insurer must “conclusively . . . negate coverage as a matter of law.” Anthem, 302 F.3d at 1060.

Even when a single claim among several claims is potentially covered, “the insurer ordinarily must defend the entire action.” Croskey et al., Cal. Practice Guide: Insurance Litigation ¶ 7:530 (The Rutter Group 2015) (citing Buss v. Superior Court, 16 Cal.4th 34, 48 (1997)). The Ninth Circuit’s opinion in Pension Trust Fund, 307 F.3d 944 at 951-52,

is instructive with respect to this issue. In reversing a district court’s grant of summary judgment in favor of an insurer, the Ninth Circuit considered whether the record demonstrated a potential claim in an underlying action that could give rise to a duty to defend. Id. The Ninth Circuit noted that the “duty to defend does not usually turn on whether facts supporting a covered claim predominate or generate the claim,” and that “[i]nstead, California courts have repeatedly found that remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty.” Id. at 951 (citations omitted). As such, in order to determine whether an insurer has a duty to defend, the proper inquiry concerns the potential for liability as alleged in the underlying complaint, and not just the potential for liability as demonstrated in the titles of the claims alleged. See Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1084 (1993), as modified on denial of reh’g (May 13, 1993) (observing that in determining the duty to defend, “[w]e look not to whether noncovered acts predominate in the third party’s action, but rather to whether there is any potential for liability under the policy”); Barnett v. Fireman’s Fund Ins. Co, 90 Cal. App. 4th 500 (2001) (noting that “the duty to defend arises when the facts alleged in the underlying complaint give rise to a potentially covered claim regardless of the technical legal cause of action pleaded by the third party”).

As an initial matter, the Court notes that the parties do not dispute that the alleged conduct by Statewide in the Underlying Actions and Claims took place during the applicable period under the Policy.

The Court has reviewed the Underlying Actions and Claims and finds that the allegations contained therein are potentially covered by Policy. As an initial matter, the Underlying Actions and Claims allege conduct that falls within the Policy’s initial grant of coverage. Subject to certain limitations and exclusions, the Policy imposes on RLI the duty to defend plaintiff against “any claim seeking to hold [plaintiff] responsible for a Wrongful Act,” which is defined in part as “any actual or alleged error, omission or negligent act, committed solely in the rendering of or failure to render Professional Services by an Insured or any person or entity for which the Insured is legally liable.” Policy at 8. “Wrongful Act” is *also* defined in part as “any actual or alleged error, omission or negligent act committed solely in the rendering of or failure to render Professional Services by an Insured or any person or entity for which the Insured is legally liable and that results in Personal Injury”; “Personal Injury” in turn is defined in

part as “[o]ral or written publication, in any manner, of material that violates a person’s right of privacy[, among other injuries].” Policy at 8.

Here, each of the Underlying Actions and Claims allege that Statewide obtained one or more investigative consumer reports about each plaintiff who completed a rental application for Statewide’s apartments, and that Statewide failed to provide plaintiffs with a copy of any of the reports prepared about the plaintiffs. See SUF ¶¶ 6-44.[5] The Underlying Actions and Claims allege that Statewide’s failure to provide such reports constitute “willful and grossly negligent” violations of the ICRAA. Id.; dkts. 1-2 to 1-9. Because the Underlying Actions and Claims seek to hold Statewide liable for “negligent act[s]” committed when Statewide was rendering Professional Services,[6] there is potential liability coverage under the Policy. Policy at 8.

---

[5] Each of the underlying actions allege three causes of action: (1) Violations of the ICRAA (Cal. Civ. Code, § 1786, et seq.); (2) Failure to Provide Receipt for Tenant Screening (Cal. Civ. Code, § 1950.6); (3) Declaratory Relief. See dkts. 1-2 to 1-8. The Hidalgo Action alleges the same three causes of action as the other underlying actions but adds three additional claims: Invasion of Privacy; Violations of the Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750, et seq) (“CLRA”); False Advertising. Dkt. 1-9. The Kuciej Claim and the Ramirez Claim allege that Statewide committed similar violations of the ICRAA. SUF ¶¶ 45, 48.

[6] “Professional Services” is defined as “services rendered to others for a fee solely in the conduct of the Insured’s profession as stated in Item 8. of the Policy Declarations,” which in turn is defined as “[s]olely in the performance of providing Real Estate Services.” In turn, “Real Estate Services” is defined as “services rendered to others solely in the conduct of the Insured’s profession as a closing agent, escrow agent, leasing agent, notary public, Property Manager, real estate agent or broker, real estate appraiser, real estate auctioneer, real estate consultant, title abstractor/searcher, title agent, or witness closer, provided that the Insured rendering such services is properly licensed, in jurisdictions where licensure is required, to render such services.” Policy at 4, 8, 25.
“Professional Services” is defined in the Policy as “services rendered to others for a fee solely in the conduct of the Insured's profession as stated in Item 8 of the Policy Declarations,” with Item 8 supplying the language “[s]olely in the performance of providing Real Estate Services.”

Moreover, the Underlying Actions and Claims also allege that Statewide’s failure to comply with the ICRAA’s statutory requirements constitute an “invasion of privacy,” and that the plaintiffs suffered damages for an “invasion of privacy.” See Dkts. 1-2 to 1-9. Construing the Underlying Actions and Claims “in the insured’s favor,” Montrose, 6 Cal.4th at 299-300, the Court finds that plaintiffs in the Underlying Actions and Claims have alleged that they possessed a reasonable expectation of privacy in their consumer information when applying for Statewide’s housing, and that by commissioning and obtaining investigative consumer reports about the plaintiffs, Statewide caused the “publication … of material that violates a person’s right of privacy.” Policy at 8. Accordingly, there is potential liability coverage under the Policy based on Statewide’s alleged violations of individuals’ right of privacy in the Underlying Actions and Claims.

The Court further finds that none of the Policy exclusions apply to eliminate RLI’s duty to defend Statewide. Under California law, “exclusionary clauses are interpreted narrowly against the insurer.” White v. Western Title Ins. Co., 40 Cal.3d 870, 881 (1985). “[A]n insurer that wishes to rely on an exclusion has the burden of proving, through conclusive evidence, that the exclusion applies in all possible worlds.” Atl. Mut. Ins. Co. v. J. Lamb, Inc., 100 Cal. App. 4th 1017, 1039 (2002). “An exclusionary clause must be ‘stated precisely and understandably, in words that are part of the working vocabulary of the average layperson.’” My Choice Software, LLC v. Travelers Cas. Ins. Co. of Am., 823 F. App’x 510, 511 (9th Cir. 2020) (quoting Haynes v. Farmers Ins. Exch., 32 Cal. 4th 1198, 1204 (2004)). “Moreover, ‘exclusionary language must be construed in the context of the policy as a whole,’ and the purpose of liability insurance is to provide protection from claims brought against the insured.” Id. (quoting S.B.C.C., Inc. v. St. Paul Fire & Marine Ins. Co., 186 Cal. App. 4th 383, 397 (2010)). “‘[A]mbiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured’s reasonable expectation of coverage.’” Id. (quoting La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co., 9 Cal. 4th 27, 37 (1994)).

Construing the Policy’s exclusions narrowly, the Court finds that RLI has not met its burden of proving that any Policy exclusion conclusively applies to defeat coverage.

The Consumer Protection Exclusion does not relieve RLI of its duty to defend here. The Consumer Protection Exclusion excludes from coverage “any Claim arising out of, directly or indirectly resulting from or in consequence of or in any way involving

… any actual or alleged violation of any securities, antitrust, restraint of trade, unfair trade practices, consumer protection, or other similar law by any person, including but not limited to any Insured." Policy at 9. Importantly, the term "consumer protection" is not defined in the Policy. The Underlying Actions and Claims allege wrongdoing by Statewide that arise out of—or at the very least involve—Statewide's alleged violation of the ICRAA. See Dkts. 1-2 to 1-9. In its briefing, RLI asserted that such allegations trigger the Consumer Protection Exclusion because the ICRAA is unambiguously a consumer protection law. Mot. by defendant at 10; Reply by defendant at 7 ("There is no dispute that ICRAA is a consumer protection law.").

The Court is not persuaded by RLI's argument. Because "consumer protection" is not defined in the Policy, the Court must determine whether the ICRAA is a "consumer protection[] or similar law" within the meaning of the Policy. The Court finds that there is at least some ambiguity as to this issue such that it "must be resolved in the insured's favor." Montrose, 6 Cal.4th at 299-300. While the ICRAA may be characterized as a consumer protection law,[7] it is uncertain whether an "average layperson" reading the Consumer Protection Exclusion would conclusively understand it to include the ICRAA. See Haynes v. Farmers Ins. Exch., 32 Cal. 4th 1198, 1204 (2004). This is because the meaning of the phrase "consumer protection[] or other similar law" may be cabined by the list of laws that precede the phrase in the Policy: "securities, antitrust, restraint of trade, unfair trade practices, consumer protection, or other similar law." Policy at 9. Given this context in which the words "consumer protection[] or other similar law" appear, a reasonable layperson construing the Policy as a whole could thus understand that "consumer protection[] or other similar law" refers only to laws that protect consumers from anti-competitive or unfair trade practices, but does not include the ICRAA, which, among other things, purports to protect consumers' "right to privacy." See Cal. Civ. Code § 1786(b) (legislature noting that the ICRAA was established, in part, to "insure that investigative consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's *right to privacy*") (emphasis added). Because there is at least some ambiguity as to whether the

[7] See, e.g., Bernuy v. Bridge Prop. Mgmt. Co., 89 Cal. App. 5th 1174, 1178 (2023) (The "[ICRAA] . . . is a consumer protection measure that mandates certain disclosures for investigative consumer reports, which as relevant here are often used by landlords to make decisions regarding consumers who apply for housing").

ICRAA is a "consumer protection[] or similar law" within the meaning of the Policy, the Court must construe this ambiguity in favor of Statewide and find that the Consumer Protection Exclusion does not relieve RLI of its duty to defend Statewide with respect to the Underlying Actions and Claims. See White v. Western Title Ins. Co., 40 Cal. 3d 870, 881 (1985) ("[A]n insurer that wishes to rely on an exclusion has the burden of proving, through conclusive evidence, that the exclusion applies in *all possible worlds*.") (emphasis added).

At oral argument, counsel for RLI argued that Ninth Circuit's decision in Los Angeles Lakers, Inc. v. Fed. Ins. Co., 869 F.3d 795, 801 (9th Cir. 2017), supports its position that the Consumer Protection Exclusion relieves RLI of its duty to defend here. In that case, the Ninth Circuit held that "a liability insurance policy that unequivocally and broadly excludes coverage for invasion of privacy claims also excludes coverage for [Telephone Consumer Protection Act ("TCPA")] claims." Id. at 799. The Court disagrees with RLI's argument because Los Angeles Lakers is distinguishable. As an initial matter, the Ninth Circuit in Los Angeles Lakers made clear that under California law, "courts are to interpret 'exclusionary clauses ... narrowly against the insurer,'" and that "[c]ourts are to interpret coverage clauses in insurance contracts 'broadly so as to afford the greatest possible protection to the insured.'" Id. at 801 (citations omitted). The insurance policy at issue in Los Angeles Lakers provided that "[n]o coverage will be available" for a claim "based upon, arising from, or in consequence of libel, slander, oral or written publication of defamatory or disparaging material, *invasion of privacy*, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, malicious use or abuse of process, assault, battery or loss of consortium[.]" Id. at 800 (emphasis added). The Ninth Circuit held that "[b]ecause a TCPA claim is inherently an invasion of privacy claim, [the insurer] correctly concluded that [the underlying] TCPA claims [asserted against the insured] fell under the Policy's broad exclusionary clause." Id. at 806. Importantly, the Ninth Circuit reached this conclusion after finding that "the TCPA twice explicitly states that it is intended to protect privacy rights [and] … contains no other statement regarding its intended purpose. Thus, [the Ninth Circuit] … presume[d] … that the purpose of the TCPA is to protect privacy rights *and privacy rights alone*." Id. (emphasis added). By contrast, the Consumer Protection Exclusion in this case does not specifically exclude coverage for claims involving or arising out of an "invasion of privacy," a specific class of torts which the TCPA was intended to protect against. See id. at 801-802. Rather, the Consumer Protection Exclusion excludes from

coverage claims arising out of a "securities, antitrust, restraint of trade, unfair trade practices, *consumer protection, or other similar law*." Policy at 9 (emphasis added). To avoid rendering the phrase "or other similar law" superfluous, the Court finds that the meaning of "consumer protection[] or other similar law" is reasonably cabined by the preceding reference to laws that protect consumers from anti-competitive or unfair trade practices.[8] Accordingly, the Consumer Protection Exclusion is reasonably understood to not include the ICRAA, which has a legislative focus of protecting consumers' "right to privacy," Cal. Civ. Code § 1786(b), a right not referenced in the Consumer Protection Exclusion. Construing the Consumer Protection Exclusion narrowly against the insurer, the Court finds that it does not relieve RLI of its duty to defend Statewide against the underlying ICRAA claims.

Nor has RLI established that the Privacy Breach Exclusion conclusively applies to eliminate the duty to defend here. The Privacy Breach Exclusion provides that: "The Insurer shall not be liable for Damages or Claim Expenses in connection with any Claim arising out of, directly or indirectly resulting from or in consequence of or in any way involving: … a Privacy Breach." Policy at 9, 24 (emphases omitted). In turn, "Privacy Breach" is defined in relevant part as "a violation of a Privacy Regulation," which in turn is defined as "statutes or regulations regulating the use and protection of Personal Information." Id. at 23. "Personal Information" is defined as:

a. an individual's name, address, telephone number, or email address;
b. medical or healthcare data;
c. a social security number;
d. a driver's license number or any other state identification number;
e. a financial account number in combination with any required password, access code or other security code that would permit access to the financial account;
f. a credit or debit card number; or

[8] By contrast, the explicit use of the phrase "invasion of privacy" in the Los Angeles Lakers policy exclusion is not so cabined: The exclusion lists "invasion of privacy" amid disparate torts that do not share any unifying theme or themes, including libel, wrongful entry, eviction, false imprisonment, malicious prosecution, battery, and loss of consortium. 869 F.3d at 800.

> g. non-public individually identifiable information, as defined in any applicable Privacy Regulation.

Policy at 23.

In other words, the Policy excludes insurance coverage for any “Claim” against Statewide “arising out of” or “involving” Statewide’s “violation of statutes or regulations regulating the use and protection of Personal Information,” as specifically defined above. There is at least one reason why the Privacy Breach Exclusion does not conclusively apply to the Underlying Actions and Claims against Statewide: There is at some ambiguity as to whether the ICRAA is a “Privacy Regulation,” meaning a “statute[] or regulation[] regulating the use and protection of Personal Information.” Policy at 23. This ambiguity arises from the following disconnect between the ICRAA’s regulatory subject matter and the definition of “Personal Information” in the Policy: “The ICRAA regulates ‘investigative consumer reports,’”[9] Moran v. Screening Pros, LLC, 943 F.3d 1175, 1179 (9th Cir. 2019), which are defined in the statute:

> The term “investigative consumer report” means a consumer report in which information on a consumer’s *character, general reputation, personal characteristics, or mode of living* is obtained through any means. The term *does not include* a consumer report or other compilation of information *that is limited to specific factual information* relating to a consumer's credit record or manner of obtaining credit obtained directly from a creditor of the consumer or from a consumer reporting agency when that information was obtained directly from a potential or existing creditor of the consumer or from the consumer.

Cal. Civ. Code § 1786.2 (emphases added).

By contrast, the Policy defines “Personal Information” as a discrete list of specific factual information[10] and does not include “information on a consumer’s character,

---

[9] The Ninth Circuit has further stated that “[the Consumer Credit Reporting Agencies Act (CCRAA) and ICRAA] were intended to cover separate information: the CCRAA governed creditworthiness, while the ICRAA governed character information.” Moran v. Screening Pros, LLC, 943 F.3d 1175, 1179 (9th Cir. 2019).

[10] As Statewide has argued in its motion, the catch-all definition of “Personal Information”— “g.non-public individually identifiable information, as defined in any

general reputation, personal characteristics, or mode of living.” See Policy at 23. Accordingly, there is at least some ambiguity as to whether the ICRAA is a “statute[] or regulation[] regulating the use and protection of Personal Information,” given that the ICRAA “w[as] intended to cover … *character information*,” which is excluded from the definition of “Personal Information” in the Policy. Policy at 23; Moran, 943 F.3d at 1179 (emphasis added). Even if the ICRAA may also directly or indirectly “regulate[] the use and protection of Personal Information [as specifically defined in the Policy],” given the ICRAA’s apparent legislative focus on regulating consumers’ character information, a reasonable person could understand the ICRAA to fall outside the meaning of a “Privacy Regulation.” Accordingly, Statewide is entitled to this reasonable interpretation in its favor. Montrose, 6 Cal. 4th at 299-300; Atl. Mut. Ins. Co. v. J. Lamb, Inc., 100 Cal. App. 4th 1017, 1039 (2002) (“[A]n insurer that wishes to rely on an exclusion has the burden of proving, through conclusive evidence, that the exclusion applies in *all possible worlds*.”) (emphases added); White v. Western Title Ins. Co., 40 Cal.3d 870, 881 (1985). (“[E]xclusionary clauses are interpreted narrowly against the insurer.”).

Statewide has made a prima facie showing that there is potential coverage for the Underlying Actions and Claims within the terms of the Policy and that no Policy exclusions unambiguously apply. Because RLI fails to produce undisputed evidence “conclusively eliminating the potential for coverage under the [P]olicy,” the Court finds that RLI has a duty to defend Statewide in the Underlying Actions and Claims. See Anthem Elec., Inc. v. Pacific Employers Ins. Co., 302 F.3d 1049, 1055 (9th Cir. 2002). RLI’s duty to defend Statewide in the Underlying Actions and Claims includes the duty to defend Statewide against all claims asserted against Statewide, including those that may not be covered under the Policy; this is so because when even a single claim among several claims is potentially covered, “the insurer ordinarily must defend the entire action.” Croskey et al., Cal. Practice Guide: Insurance Litigation ¶ 7:530 (The Rutter Group 2015) (citing Buss v. Superior Court, 16 Cal.4th 34, 48 (1997)).

Furthermore, because it is undisputed that RLI refused to defend Statewide in the Underlying Actions and Claims, PSUF ¶¶ 51-66, the Court finds that RLI breached its duty to defend. Under California law, when an insurance company breaches its

---

applicable Privacy Regulation”—results in a self-referential definition for “Privacy Regulation,” which cannot be coherently construed to encompass the ICRAA. Mot. at 22. In other words, the catch-all definition assumes the very fact at issue.

contractual obligation by failing to defend an insured, it is “liable for attorneys’ fees as provided in the policy, or as ‘incurred in good faith, and in the exercise of a reasonable discretion’ in defending the action.” Zurich Ins. Co., v. Killer Music Inc., 998 F.2d 674, 680 (9th Cir.1993) (quoting Cal. Civ. Code § 2778). Accordingly, RLI is liable to Statewide for all defense fees as provided in the Policy, or that Statewide has incurred in good faith, in defending against the Underlying Actions and Claims. The Court notes, however, that RLI may be entitled to seek equitable reimbursement from Statewide. See Travelers Prop. Cas. Co. of Am. v. Centex Homes, No. 11-3638-SC, 2013 WL 4528956, at *5 (N.D. Cal. Aug. 26, 2013) (“In Buss v. Superior Court, 16 Cal.4th 35 (Cal. 1997), the California Supreme Court laid out a comprehensive framework for when and how an insurer may seek reimbursement from its insured for defense costs.”).

### B. Reimbursement for Settlement Payments

Statewide requests that the Court declare that RLI is obligated to “(2) reimburse Statewide for settlement payments in the Underlying [Actions and] Claims; and (3) pay prejudgment interest.” Mot. by plaintiff at 23-24.

The Policy appears to contain a no-voluntary-payment (“NVP”) provision, which states in part:

> *An Insured shall not, except at personal cost*, make any offer or payment, admit any liability, *settle any Claim*, assume any obligation, or incur any expense *without the Insurer’s prior written consent*. Any such offer or payment, admission of liability, settlement, assumption of any obligation, or expense incurred without the Insurer’s prior written consent *shall be the sole obligation of the Insured*.

Policy at 6, 19 (“NVP Provision”) (emphases added and alterations in original). See also Dietz Int’l Pub. Adjusters of California, Inc. v. Evanston Ins. Co., 796 F. Supp. 2d 1197, 1212 (C.D. Cal. 2011), aff'd, 515 F. App’x 680 (9th Cir. 2013) (“The general validity of no-voluntary-payment provisions in liability insurance policies is well established.”) (citations omitted).

However, under California law, NVP provisions are not enforced in circumstances given “economic necessity, *insurer breach*, or other extraordinary circumstances.” Jamestown Builders, Inc. v. Gen. Star Indem. Co., 77 Cal. App. 4th 341, 346 (1999) (emphasis added). Thus, “[a]n insured that has been abandoned by its carrier and left

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL 'O'**

| Case No. | 2:25-cv-08038-CAS-Ex | Date | July 15, 2026 |
| --- | --- | --- | --- |
| Title | Statewide Enterprises, Inc. v. RLI Insurance Company | | |

exposed to the possibility of a default judgment may protect its own interests by entering into a reasonable settlement without losing its right to recover on the policy." Id. at 347-48. In other words, "[t]he no-voluntary-payments provision is superseded by an insurer's antecedent breach of its coverage obligation. And the burden of proof shifts to the insurer to show that the settlement was not reasonable or was the product of fraud or collusion." Id. at 348. See also Gribaldo, Jacobs, Jones & Assocs. v. Agrippina Versicherunges A., 3 Cal. 3d 434, 449 (1970) ("[W]hen the insured has requested and been denied a defense by the insurer[,] … the insured may ignore the policy's provisions forbidding the incurring of defense costs without the insurer's prior consent, and under the compulsion of that refusal undertake his own defense at the insurer's expense.").

Here, because it is undisputed that "the insurer [RLI] wrongfully refused to defend the insured and that the insured thereafter entered into a reasonable settlement, … the burden of proof shifts to the insurer to show that the settlement was not reasonable or was the product of fraud or collusion." Safeco Ins. Co. v. Superior Ct., 71 Cal. App. 4th 782, 790 n.5 (1999). Here, RLI has not set forth evidence demonstrating that the global Settlement Agreement and the Perez settlement that Statewide entered into to resolve all of the Underlying Actions and Claims were unreasonable or the product of fraud or collusion.[11] Accordingly, RLI, having breached its duty to defend Statewide, has not met its burden of demonstrating that the NVP Provision in the Policy should be enforced despite RLI's breach of its duty to defend. See Great Am. All. Ins. Co. v. Cont'l Cas. Co., No. 23-CV-1796-BAS-JLB, 2025 WL 2323512, at *20 (S.D. Cal. Aug. 12, 2025) ("[A] no-voluntary payment provision has no force where an insurer chooses not to defend its insured.").

---

[11] RLI merely states that it "lacks information sufficient to admit or deny the fact" that "[b]ased on Statewide's discussions with counsel and its understanding of potential exposure, the settlement amount of $895,000.00 was deemed reasonable as the amount due for the claims plus potential attorneys' fees was likely to exceed that figure." PSUF ¶ 81. Likewise, RLI states that it "lacks information sufficient to admit or deny the fact" that the attorneys' fees charged by Statewide's counsel to defend itself in the Underlying Actions and Claims were unreasonable. See id. ¶¶ 97, 98. RLI's statements that it "lacks information" as to these facts does not create a genuine dispute. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

RLI is therefore liable for all attorneys’ fees and settlement expenses reasonably incurred by Statewide in resolving the Underling Actions and Claims. However, to the extent that Statewide incurred and paid for legal fees not reasonably related to defending itself against and resolving the Underlying Actions and Claims, RLI is not liable to Statewide for such expenses.[12]

### C. Damages

It is undisputed that Statewide did not fully fund the settlement amount and defense costs associated with resolving the Underlying Actions and Claims; rather, each participating owner client of Statewide funded the settlement and defense expenses in amounts equal to their proportional share of liability presented by the Underlying Actions and Claims. DSUF ¶ 99.

The parties dispute whether Statewide’s owner clients are covered under the Policy. Compare Opp. by plaintiff at 22 (“[Statewide’s] owner clients are insureds under the … [P]olicy”), with Opp. by defendant at 24 (none [of Statewide’s owner clients] qualifies as an ‘Insured’ under the … Policy”).

The Policy includes “Additional Insured - Vicarious Liability” endorsements that effectively amend the definition of “Insured” to include listed entities as insureds under the Policy, provided “the Named Insured [i.e., Statewide] or Subsidiary is *required by written contract* to add as an additional insured under this Policy…. [Listing numerous corporate entities].” Policy at 34-37 (emphases omitted). Statewide has presented no evidence that Statewide entered into written contracts that “required” it to add any of its owner clients “as an additional insured” under the Policy. Dkt. 42 at 87, ¶ 112. Thus, Statewide’s owner clients do not qualify as “Insureds” under the Policy and are not entitled to recover damages under the Policy for the settlement and attorneys’ fees they have paid to resolve the Underlying Actions and Claims.

[12] See PSUF ¶¶ 99-104 (stating that “[t]he vast majority of th[e] sum [paid to Statewide’s counsel] was reasonable and necessary for defending the Underlying Actions and Claims,” but that “[a] small portion of the invoiced expenses [$3,366.50 out of $198,163.39 total expenses] were related to other work performed by WSHB on behalf of Statewide.”).

Nonetheless, Statewide's owner clients may be entitled, under a theory of equitable contribution, to compensation for the payments they made to settle the Underlying Actions and Claims against Statewide. See Associated Indus. Ins. Co. v. Mt. Hawley Ins. Co., 536 F. Supp. 3d 676, 683 (S.D. Cal. 2021) ("Equitable contribution ... applies to apportion costs among insurers that share the same level of liability on the same risk as to the same insured. It allows an insurer that defended and settled a suit against its insured to seek pro-rata reimbursement from nonparticipating coinsurers who refused to defend the insured. For a settling insurer to prevail on an equitable contribution action, the settling insurer must show that the nonparticipating coinsurer owed [a] duty to defend the insured in the first place.") (citations omitted). The Court is unable to decide the issue of whether Statewide's owner clients are entitled to compensation from RLI to resolve the instant motions for summary judgment. Rather, the Court finds that Statewide is entitled to reimbursement from RLI only for the attorneys' fees and settlement expenses that Statewide reasonably incurred in resolving the Underlying Actions and Claims; Statewide is not entitled to damages it did not incur. See Cal. Civil Code § 3300 (the measure of contract damages "is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby…").

**D. Bad Faith Claim**

Defendant moves for summary judgment on Statewide's claim against it for breach of the covenant of good faith and fair dealing because "RLI's reasons for withholding benefits [under the Policy] were not 'unreasonable or without proper cause.'" See id. at 28. Defendant argues that this is so because defendant timely advised plaintiff that the allegations against plaintiff under the ICRAA are excluded from Policy coverage. Id. Moreover, defendant argues that it reasonably refused Statewide's demands that RLI pay the full $895,000 settlement amount, the Perez Judgment (another $10,100), and all of Statewide's attorney's fees and costs because Statewide did not pay or has been reimbursed for the large majority of those sums from its owner clients.

In opposition, plaintiff argues that the genuine dispute doctrine—under which "a court can conclude as a matter of law that an insurer's denial of a claim is not unreasonable, so long as there existed a genuine issue as to the insurer's liability"—is only applicable as a bad faith standard in first-party coverage cases but not third party cases such as this one. Opp. by plaintiff at 20 (citing My Choice Software, LLC v. Travelers Cas. Ins. Co. of Am., No. SACV19680JVSKESX, 2021 WL 4735092, at *7

(C.D. Cal. Mar. 17, 2021); Teleflex Med. Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 851 F.3d 976, 988 n.3 (9th Cir. 2017). Plaintiff argues that there is evidence supporting its bad faith claim because RLI denied plaintiff a defense despite plaintiff's repeated explanations as to why RLI owed plaintiff a defense against the Underlying Actions and Claims. Id. at 21-22.

In reply, defendant repeats that plaintiff's bad faith claim fails as a matter of law because "even if a defense duty were found, RLI's reasons for withholding benefits [from Statewide] was … not 'unreasonable or without proper cause.'" Reply at 24 (citation omitted).

"[A]n insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract." Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713, 723 (2007) (citation omitted). "A genuine dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds." Id. "The genuine issue rule in the context of bad faith claims allows a [trial] court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable—for example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law. … On the other hand, an insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, *a jury could conclude that the insurer acted unreasonably*." Amadeo v. Principal Mut. Life Ins. Co., 290 F.3d 1152, 1161–62 (9th Cir. 2002) (emphasis added) (citation omitted).

Even assuming that the "genuine dispute doctrine" applies to this case,[13] there is sufficient evidence in the record from which a jury could conclude that RLI denied Statewide's request for a defense unreasonably and in bad faith. RLI denied Statewide's repeated requests for a defense in Underlying Actions and Claims, even after Statewide's insurance coverage counsel had written to RLI on multiple occasions explaining why

[13] Teleflex Med. Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 851 F.3d 976, 988 n.3 (9th Cir. 2017) ("[O]ur court and several California appellate courts have expressed skepticism about [the genuine dispute doctrine's] applicability to 'third party claim' cases like this one.").

defendant's denial of a defense was in error. See PSUF ¶¶ 55-66. Viewing the facts in the light most favorable to Statewide, a reasonable jury could conclude that such repeated denials by RLI were unreasonable and in bad faith. See Howard v. Am. Nat'l Fire Ins. Co., 187 Cal. App. 4th 498, 530 (2010) ("[I]t has never been held that an insurer in a third party case may rely on a genuine dispute over coverage to refuse settlement."). Accordingly, defendant is not entitled to summary judgment on plaintiff's bad faith claim.

### E. Prejudgment Interest

Statewide argues that "California law requires RLI to pay prejudgment interest on all defense invoices from the date of the invoice and on all settlement payments. An insured incurring defense expenses which the insurer owes is entitled to prejudgment interest." Mot. by plaintiff at 22-23 (citing cases).

In opposition, RLI argues that "Statewide's claim for prejudgment interest on the full sum of its defense costs and settlement amounts is also unwarranted" because "Statewide's actual claim is a small fraction of the sum it sued for" and that "the amount of damages is either disputed or cannot be determined from information available" to RLI. Opp. to mot. by plaintiff at 25.

In reply, Statewide argues that the "withholding of prejudgment interest is appropriate [only] when there is a *factual* dispute, not a *legal* dispute, that prevents calculation of damages." Reply by plaintiff at 21. Here, however, Statewide argues that "both parties agree on the underlying facts regarding the amount of potential damages," and that "[a]t no time has RLI disputed the amounts paid [by Statewide] in settlement or toward defense fees." Id. at 22.

California Civil Code § 3287, titled "Interest on damages; right to recover; time from which interest runs; interest rate," provides:

> (a) A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day ….

Cal. Civ. Code § 3287(a).

"Damages are deemed certain or capable of being made certain within the provisions of [Cal. Civ. Code § 3287(a)] where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage." Fireman's Fund Ins. Co. v. Allstate Ins. Co., 234 Cal. App. 3d 1154, 1173 (1991). "[An insured] is entitled to prejudgment interest on the expenses it incurred in defending [an] action that [the insurer] was obligated to defend. Interest began to accrue on the date [the insured] incurred its obligations (i.e., the billing dates)." CoPart, Inc. v. Travelers Indemn. Co. of Illinois, No. C-97-1862-VRW, 1999 WL 977948, at *3 (N.D. Cal. Oct. 22, 1999), aff'd sub nom. Copart, Inc. v. Travelers Ins. Co., 11 F. App'x 815 (9th Cir. 2001).

The Court finds that Statewide is entitled to prejudgment interest. However, because the record does not make clear the total amounts that Statewide incurred in retaining counsel to defend against and in settling the Underlying Actions and Claims (or when Statewide incurred such costs), the Court does not at this time determine the amount of prejudgment interest owed to Statewide in this action. The Court notes, however, that California law requires RLI to pay prejudgment interest on all expenses reasonably incurred by Statewide in defending itself against the Underlying Actions and Claims from the date the expense was incurred. See CoPart, Inc. v. Travelers Indemn. Co. of Illinois, No. C-97-1862-VRW, 1999 WL 977948, at *3 (N.D. Cal. Oct. 22, 1999), aff'd sub nom. Copart, Inc. v. Travelers Ins. Co., 11 F. App'x 815 (9th Cir. 2001) ("Interest began to accrue on the date [the insured] incurred its obligations (i.e., the billing dates)."); Tradewind Prods., Inc v. Hartford Fire Ins. Co., No. CV065201CASFFMX, 2009 WL 10710831, at *4 (C.D. Cal. Mar. 30, 2009) ("[P]laintiff is entitled to prejudgment interest from the dates it received invoices from its attorneys until defendants tendered payment.").

## V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** plaintiff's motion for partial summary judgment seeking a Court declaration that (1) RLI breached its duty to defend Statewide in the Underlying Actions and Claims; and (2) that RLI is liable to Statewide for all defense fees that Statewide reasonably incurred in defending against the Underlying Actions and Claims, including prejudgment interest thereon.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-08038-CAS-Ex | Date | July 15, 2026 |
| Title | Statewide Enterprises, Inc. v. RLI Insurance Company | | |

The Court **GRANTS** plaintiff's motion for partial summary judgment seeking a declaration that Statewide is entitled to reimbursement for all payments it made to settle the Underlying Actions and Claims, including prejudgment interest thereon.

The Court **ORDERS** Statewide, within thirty (30) days of the date of this order, to file calculations of (1) the total defense costs that Statewide reasonably incurred in defending against the Underlying Actions and Claims, plus prejudgment interest; and (2) the total costs that Statewide incurred to settle the Underlying Actions and Claims, plus prejudgment interest. Statewide shall provide supporting documentation for its calculations, and RLI may file a response or objection not exceeding five pages to Statewide's filing.

The Court **DENIES** defendant's motion for partial summary judgment seeking a Court declaration that RLI has no duty to defend plaintiff.

The Court **DENIES** defendant's motion for partial summary judgment seeking a Court declaration that RLI has no duty to indemnify plaintiff.

The Court **DENIES** defendant's motion for partial summary judgment on plaintiff's claim for breach of the covenant of good faith and fair dealing.

IT IS SO ORDERED.

| | | | |
|---|---|---|---|
| | 00 | : | 00 |
| Initials of Preparer | CMJ | | |